**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Plaintiff,**

v.

**THOMAS M. MADDEN & COMPANY; Frank Steck; Phyllis Cannonito, Executrix of the Estate of Immanuel Cannonito, deceased; Joseph T. Zieminski; Carol Marynowski; and Clarence Dew, Defendants.**

**No. 91 C 8297.**

United States District Court, N.D. Illinois, E.D.

Feb. 4, 1993.

current litigation.

Frank L. Schneider, Lisa Marco Kouba, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, IL, for National Union Fire Ins. Co. of Pittsburgh, PA.

Cornelius F. Riordan, Harold E. McKee, III, McNeela & Griffin, Ltd., Chicago, IL, for Thomas M. Madden & Company.

James Lanting, Van Der Aa, Lanting & Paarlberg, South Holland, IL, for Frank Steck, Phyllis Cannonito, Immanuel Cannonito, Joseph T. Zieminski and Carol Marynowski.

Joel Greenblatt, Frost & Greenblatt, Chicago, IL, for Clarence Dew.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Presently before the court is plaintiff National Union Fire Insurance Company's ("National Union") motion for summary judgment. For the reasons set forth below, we deny the motion and *sua sponte* dismiss National Union's complaint on behalf of all defendants.

### I. SUMMARY JUDGMENT STANDARD

Under the Federal Rules of Civil Procedure, summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)). Once the moving party has done this, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court must read all facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Griffin v. Thomas*, 929 F.2d 1210, 1212 (7th Cir.1991).

### II. BACKGROUND

On approximately June 6, 1988, defendant Thos. M. Madden & Company ("Madden") entered into a contract with the County of Cook, whereby Madden agreed to perform certain construction on Cottage Grove Avenue in Bloom Township, Illinois. In connection with Madden's performance of its contractual obligations, Madden entered into an oral lease with defendant Clarence Dew, whereby Dew authorized Madden to erect and operate a portable concrete batch plant on certain property located near the construction site. Dew explicitly represented to Madden that he owned the property at issue. In the summer of 1989, however, Madden learned that the portable concrete batch plant was

erected partially on property owned by Frank Steck and Emanuel Cannonito. Madden subsequently attempted to rent the property in order to operate the batch plant, but Steck and Cannonito refused. Madden continued to operate the batch plant until at least September 29, 1989.

On August 10, 1989, Cannonito and Steck filed a complaint in the Circuit Court of Cook County, alleging unlawful trespass by Madden. *Steck v. Thos. M. Madden & Co.*, No. 89 CH 7082. Cannonito, Steck, Joseph T. Zieminski and Carol Marynowski[1] filed a second suit against Madden on November 8, 1990, in which they alleged additional unlawful acts committed by Madden while occupying Steck and Cannonito's property without consent. *Steck v. Thos. M. Madden & Co.*, No. 90 M6 6292. The two state-court actions were consolidated on December 10, 1990. On May 30, 1991, the underlying plaintiffs filed an amended complaint containing two counts. Count I alleged that Madden negligently failed to survey and ascertain the ownership of the property on which the company erected the cement batch plant. Count II alleged unlawful trespass by Madden as well as wilful and wanton acts causing damage to the land. On June 19, 1992, the state court granted plaintiffs' motion for voluntary dismissal. Plaintiffs subsequently refiled the action on July 9, 1992, alleging the same causes of action in negligence and trespass, but adding as defendants Dew and Brites Cartage, Ltd.

National Union, a New York Corporation, issued two commercial general liability insurance policies to Madden, Nos. 817–14–25 RA (effective May 21, 1988 to July 6, 1989) and 817–31–84 RA (effective July 6, 1989 to July 6, 1990). Both policies were, of course, subject to certain terms, conditions, limitations, and exclusions. Madden first notified National Union of the underlying action on or about May 21, 1991, just prior to the filing of the first-amended complaint. On December 27, 1991, National Union filed this diversity action pursuant to the Declaratory Judgments Act, 28 U.S.C. §§ 2201, 2202 (1988). It is seeking a declaration that it owes no duty to defend or to indemnify Madden under these policies against the underlying claims pending in the Circuit Court of Cook County.[2]

## III. DISCUSSION

Under Illinois law, "an insurer has two duties to an insured when a lawsuit is filed that may trigger the insurer's policy coverage: the duty to defend and the duty to indemnify." *Aetna Casualty and Sur. Co. v. Prestige Casualty Co.*, 195 Ill. App.3d 660, 664, 142 Ill.Dec. 689, 691, 553 N.E.2d 39, 41 (1st Dist.1990) (citing *Zurich Ins. Co. v. Raymark Indus., Inc.*, 118 Ill.2d 23, 112 Ill.Dec. 684, 514 N.E.2d 150 (1987)). These duties are separate and distinct, the duty to defend being the broader of the two. *Id.* We begin our analysis with National Union's duty to defend.

The duty to defend hinges on a liberal reading of the underlying complaint: to the extent that a single cause of action is potentially within the policy coverage, the duty to defend is triggered, *Maryland Casualty Co. v. Peppers*, 64 Ill.2d 187, 193, 355 N.E.2d 24, 28 (1976), even if the insurer discovers that the allegations are groundless, false or fraudulent. *Thornton v. Paul*, 74 Ill.2d 132, 144, 23 Ill.Dec. 541, 545, 384 N.E.2d 335, 339 (1978). "Unless the complaint, on its face, clearly alleges facts which, if true, would exclude coverage, the potentiality of coverage is present and the insurer has a duty to defend." *Aetna Casualty*, 195 Ill.App.3d at 664, 142 Ill.Dec. at 691, 553 N.E.2d at 41 (citing *Reis v. Aetna Casualty & Sur. Co.*, 69 Ill.App.3d 777, 25 Ill.Dec. 824, 387 N.E.2d 700 (1st Dist.1978). A court may look beyond the allegations of the complaint "only if the coverage issue involves such ancillary matters as whether the insured paid the premiums or whether

---

**1.** Zieminski and Marynowski are the owners of real estate adjoining and contiguous to that owned by Steck and Cannonito.

**2.** National Union also seeks a permanent injunction against Madden and any other defendant from claiming any benefit under these policies arising out of the underlying suits. However, based on National Union's representation, *see* Memorandum Re Order of April 1, 1992 at 3, we dismiss the request for injunctive relief as moot.

he is the proper insured under the policy." *Bituminous Casualty Corp. v. Fulkerson,* 212 Ill.App.3d 556, 562, 156 Ill.Dec. 669, 674, 571 N.E.2d 256, 261 (5th Dist.1991); *State Farm Fire & Casualty Co. v. Shelton,* 176 Ill.App.3d 858, 867, 126 Ill.Dec. 286, 292, 531 N.E.2d 913, 919 (1st Dist. 1988); *cf. Fidelity & Casualty Co. of New York v. Envirodyne Eng.,* 122 Ill.App.3d 301, 306–08, 77 Ill.Dec. 848, 852–53, 461 N.E.2d 471, 475–76 (1st Dist.1983) (looking beyond the allegations of the underlying complaint where duty to defend hinged solely on the nature of the services performed by the insured, an issue which could not be considered an "ultimate fact" upon which recovery is predicated in the underlying case).

In support of its current contention that it is not obligated to defend Madden in the underlying suit, National Union maintains that: (1) Madden breached the notice provision of the policies; (2) Madden acted intentionally and, hence, there was no "occurrence" as defined by the policies; (3) Madden acted intentionally and, thus, coverage is excluded by the "expected or intended" provision of the policies; and (4) any damage resulting from fill material deposited by Madden does not constitute "property damage" as such material are "pollutants" as defined under the policies. There can be no doubt that plaintiffs' negligence claim in the underlying action potentially falls within the policies' coverage. The issue presently confronting the court is whether we may look beyond the allegations of the underlying complaint to consider the "defenses" as asserted by National Union.

Of the four above mentioned "defenses" set forth by National Union in support of summary judgment, only one can be considered ancillary to the underlying dispute, *i.e.,* whether Madden breached the notice provision of the policies. Accordingly, we will look beyond the allegations of the underlying complaint in order to determine National Union's duty to defend with respect to this "defense" alone.

■ Policies Nos. 817–14–25 RA and 817–31–84 RA each contain the following provision:

Duties in the event of occurrence, claim or suit.

a. You must see to it that we are notified promptly of an "occurrence" which may result in a claim....

b. If claim is made or "suit" is brought against any insured, you must see to it that we receive prompt written notice of the claim or "suit."

In construing such notice provisions, Illinois courts routinely hold that an insured's failure to notify an insurer of a claim that the insured reasonably believes may implicate the policy precludes coverage. *See, e.g., American Country Ins. Co. v. Efficient Constr. Corp.,* 225 Ill.App.3d 177, 181, 167 Ill.Dec. 458, 460, 587 N.E.2d 1073, 1075 (1st Dist.), *appeal denied,* 145 Ill.2d 631, 173 Ill.Dec. 1, 596 N.E.2d 625 (1992). When the relevant facts are undisputed, a determination of the reasonableness of the notice is properly made by the court as a matter of law. *American Family Mut. Ins. Co. v. Blackburn,* 208 Ill.App.3d 281, 287, 153 Ill.Dec. 39, 43–44, 566 N.E.2d 889, 893–94 (4th Dist.), *appeal denied,* 139 Ill.2d 593, 159 Ill.Dec. 104, 575 N.E.2d 911 (1991).

In the instant case, it is undisputed that Madden did not provide National Union with notice of the claims against it until approximately May 21, 1991, just prior to the filing of the first-amended complaint. Nonetheless, considering all of the relevant facts and circumstances, we believe that this delay in notice was reasonable. Prior to the filing of the first-amended complaint, the claims against Madden were all premised on its intentional conduct, *i.e.,* trespass. Madden consulted with its attorneys, and concluded that any liability stemming from the action would not be covered because damages stemming from intentional conduct are explicitly excluded. In other words, intentional conduct does not constitute an "occurrence" as defined under the policies. Once Madden was served with the first-amended complaint, which for the first time included a negligence claim, Madden immediately notified National Union of the suit. Based on the undisputed facts, we conclude that Madden served timely notice upon National Union, thus trigger-

ing National Union's duty to defend Madden.[3]

 With the resolution of National Union's duty to defend, the duty to indemnify becomes a non-issue. Indeed, in an order dated April 1, 1992, this court held that a declaration on the duty to indemnify before resolution of the underlying suit would be premature. *National Union Fire Ins. Co. v. Thos. M. Madden & Co.*, No. 91 C 08297, slip op. at 2, 1992 WL 77759 (N.D.Ill. Apr. 1, 1992). Driving this conclusion was two separate rationales. First, where a declaratory judgment action to determine an insurer's duty to indemnify is brought prior to a resolution of the insured's liability, the declaratory action "is premature since the question to be determined is not then ripe for adjudication." *Maryland Casualty Co. v. Chicago & N.W. Transp. Co.*, 126 Ill. App.3d 150, 156, 81 Ill.Dec. 289, 293–94, 466 N.E.2d 1091, 1095–96 (1st Dist.1984); *see also Doran v. Corn Prods.–U.S.*, 776 F.Supp. 368, 375 (N.D.Ill.1991). Second, a determination of the duty to indemnify would depend upon facts to be adjudicated in the suit currently pending before the Circuit Court of Cook County. Under the principle of collateral estoppel, a finding in this action regarding any of National Union's remaining "defenses" before resolution in the underlying suit would be controlling in the state litigation. *Murphy v. Urso*, 88 Ill.2d 444, 455–56, 58 Ill.Dec. 828, 833–34, 430 N.E.2d 1079, 1084–85 (1981); *Maryland Casualty Co. v. Peppers*, 64 Ill.2d at 196–97, 355 N.E.2d at 29–30. Thus, "an untimely determination of coverage in this declaratory action could subsequently prejudice the parties in the underlying action." *Doran*, 776 F.Supp. at 375. For these reasons, we deny National Union's motion for summary judgment. Further, having declared that National Union bears an obligation to defend Madden, we now dismiss without prejudice that portion of the complaint that seeks a declaration of National Union's duty to indemnify Madden. Finally, based on National Union's representation that the remaining defendants have agreed to be bound by the disposition of this motion, we likewise *sua sponte* dismiss National Union's complaint on behalf Steck, Cannonito, Zieminski, Marynowski and Dew.

## IV. CONCLUSION

Finding that National Union is obligated to defend Madden in the underlying suit and that a declaration regarding its duty to indemnify would be premature, we deny National Union's motion for summary judgment and *sua sponte* dismiss its complaint on behalf of all defendants. It is so ordered.

---

**3.** We note that National Union may be confronted with a conflict in defending claims based on both negligence and intentional conduct, since a verdict based on an intentional act would free National Union from coverage, while a verdict based upon negligence may lead to coverage. *See, e.g., Blackburn*, 208 Ill.App.3d at 286, 153 Ill.Dec. at 42, 566 N.E.2d at 892. Such a conflict, however, while relieving National Union from the burden of actual participation, does not obviate National Union's responsibility to pay the expenses incurred by Madden in its defense. *Clemmons v. Travelers Ins. Co.*, 88 Ill.2d 469, 475, 58 Ill.Dec. 853, 430 N.E.2d 1104, 1109 (1981); *Burlington N. R.R. v. Illinois Emcasco Ins. Co.*, 158 Ill.App.3d 783, 785, 110 Ill. Dec. 599, 601, 511 N.E.2d 776, 778 (1st Dist. 1987); *see also Thornton v. Paul*, 74 Ill.2d 132, 23 Ill.Dec. 541, 384 N.E.2d 335 (1978).